IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : CRIMINAL NO. 13-39 |
| MICHAEL LOWRY,<br>ROBERT MULGREW, and<br>THOMASINE TYNES, | : |
| Defendants. | : |

**MEMORANDUM**

**STENGEL, J.**                                                           November 28, 2016

Michael Lowry, Robert Mulgrew, and Thomasine Tynes were convicted of perjury or false statements after a trial in the summer of 2014. They have filed an appeal in the United States Court of Appeals for the Third Circuit. In the course of that appeal, and in appellate counsel's review of the trial record, counsel determined that certain sidebar conferences were either not transcribed or possibly transcribed erroneously. They filed a motion to correct and complete the appellate record pursuant to Fed. R. App. P. 10(c).

To be sure, this motion involves four sidebar conversations occurring on May 29, 2014, June 2, 2014, June 19, 2014 and June 26, 2014. These four brief sidebar conversations took place during a nearly eight-week jury trial involving seven defendants, eleven attorneys and scores of counts. The appealing defendants suggest that there is something suspicious or sinister about the possibility that every word of every

1

sidebar discussion was not completely transcribed. In their histrionic filings, appellants' counsel refer often to "portions of the trial for which the transcript is missing or ambiguous." This is a misleading and melodramatic argument. Appellants' counsel did not have the benefit of participating in, or even attending, any of the trial. Had they participated they might recall that those sidebar conferences actually held at sidebar usually concerned scheduling issues or a discussion of the direction of certain lines of inquiry that had been fully discussed outside the presence of the jury in open court. Because of the sheer management challenge of assembling a large group of counsel (eleven in all) around the microphone used at sidebar to record the discussion, I purposely tried to limit discussions of substantive matters. Where it was necessary to discuss a legal issue or an objection I excused the jury, and on occasion the witness, and heard argument in open court. This was done for the convenience of all involved, including the court, and to ensure an accurate record.

In the Eastern District of Pennsylvania, unlike most courts around the country, court proceedings are not recorded by a court reporter, but rather by an electronic sound recording ("ESR") system managed and monitored by a trained and skilled electronic sound recording operator. That has been the practice in this court for more than thirty years. The system has its advantages and its disadvantages. One clear advantage is the ability to replay testimony in the actual voice of the witness, rather than by a court reporter reading from notes. Another is the ability of the news media to obtain recordings of court proceedings at the end of the court session (morning or afternoon) for purposes

of accurately reporting to the public what is going on in a trial or argument.  In fact, it has become the practice, and likely the expectation, that the news media will have audio recordings to use in presenting a report to their audience.  The court, the media and counsel have come to regard this as a good thing.

One disadvantage involves the practical problem of judges and lawyers actually speaking into the microphones in the courtroom so that the system can record the testimony, arguments or instructions.  In a large trial, with say eleven attorneys crowding around a microphone at sidebar with the judge, it is very difficult to capture everything counsel and the court have to say.  For that reason, where a discussion evolves beyond a brief argument and ruling on an objection, or a scheduling matter, this court's practice is to excuse the jury and ask counsel to argue in open court.

Another disadvantage of ESR, and one especially pertinent to this case, involves the occasional discussion of sensitive or privileged matters at sidebar.  For example, where a line of questioning involves an issue raised in a motion in limine, or involves confidentiality, the discussion at sidebar is recorded and becomes part of the audio track that is uploaded to our court docket and available for all the world to hear and enjoy.  Because of that very problem, we made the trial management decision, early in the case, to use a separate, portable recording system for the sidebar conferences. The confusion about the completeness of the record derives from the use of two recording systems during the trial.  As a matter of case management and trial management, the court conferred with counsel and decided to use a separate recording device for sidebar

conversations. Some of the sidebar conversations were anticipated to involve privileged matter, questions as mundane as scheduling and timing of witnesses, and arguments about the anticipated testimony that may well have been ruled irrelevant or immaterial. We chose to use a separate recording system for those sidebar conferences so as not to make possibly privileged matter or discussions about scheduling or convenience of witnesses and counsel a matter of daily public record. Nothing of substance was kept from the public record, which was available through the audio recordings on the court's public docket on a daily basis.

 When the appellate record was assembled, the transcribers did not include, in some instances, a transcript of a sidebar conference because of this use of two separate systems. This was an oversight and an understandable one at that. The transcribers were unaware of the second, supplemental, recording device used to protect the confidentiality concerns of the parties. This initial confusion led to an impression that there were certain sidebar conferences which were not recorded or for which the transcript was not prepared, or if prepared, was erroneous.

 Appellate counsel obtained and submitted declarations of trial counsel, who were contacted by appellate counsel to determine if any or all of them had independent recollections of these non-transcribed or possibly non-recorded sidebar conferences. I have reviewed those declarations, the motion to correct and complete the appellate record, and the memorandum submitted by appellate counsel. In addition, I have charged the staff of the Clerk of Court to conduct a thorough review of the entire transcript and to

obtain all audio recordings, including recordings of testimony, argument and instructions, together with the separate recordings of certain sidebar conferences. To ensure confidentiality and to ensure that no private sidebar conversations were erroneously uploaded to the court's docket, as previously indicated, the sidebar sessions were recorded separately on a portable machine. Issues that appellate counsel had brought to the attention of the court with regard to the sidebar transcripts have now been thoroughly addressed by a team of the Clerk's Office staff. At my instruction, staff rigorously investigated appellate counsel's claims by listening carefully to the pertinent audio recordings and following along with the transcripts. In cases where appellate counsel asserts that sidebar discussions exist but were not transcribed, hand-written log notes were also consulted, along with a review of the audio recordings and existing transcripts. Where sidebar conferences were inadvertently omitted by the transcriber because of the separate recording system, those discussions have now been transcribed and incorporated into the record.

From this process, we are confident that the sidebar transcripts for the June 19, 2014 and June 26, 2014 court sessions are now complete and accurate. Appellate counsel have been provided with those sidebar transcripts. Clerk's Office staff, at my request, also reviewed the audio recording, transcripts and log notes and staff has determined that the first transcript made from the May 29, 2014 proceeding is the accurate transcript. For those instances where counsel expressed concern over the transcriber's phrase "discussion off record" in the transcripts of the June 2, 2014 session, the audio recording,

transcripts and log notes were reviewed and staff has determined that "discussion off record" described conversational remarks made by the attorneys. For example, there were remarks and comments made to a tech consultant in order to confirm the number of an exhibit. The phrase "discussion off record" does not describe any sidebar discussion of any substance. The audio of these discussions is available and will be made available to appellate counsel if counsel wish to confirm this statement.

I have reviewed the trial counsel's declarations in all instances and have determined that there is nothing of substance or merit in any of those declarations which would be necessary to supplement the appellate record. For these reasons, I find that the transcript of the testimony, arguments, and instructions of the court and sidebar conferences is complete and the appellate record should so reflect.